UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARGARET CRUZ and JOSE CRUZ | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:15-CV-00714-AWT |
| | ) | |
| GREEN TREE SERVICING LLC and | ) | |
| FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
### (Memorandum of Law Incorporated)

Defendants Green Tree Servicing LLC ("Green Tree") and Federal National Mortgage Association ("Fannie Mae") file this reply in support of their Motion to Dismiss the Amended Complaint ("Complaint") filed by Plaintiffs Margaret and Jose Cruz ("Plaintiffs"). Defendants withdraw their Motion to Dismiss to the extent it seeks dismissal of Counts I and II (violation of the Telephone Consumer Protection Act). As a result, Defendants now seek dismissal on:

- Count III, violation of Creditors Collection Protection Act ("CCPA") against Green Tree, to the extent it is based on violations of Conn. Agencies Regs. §§ 36a-647-5(11), and 36a-647-6(4), (6));[1]

- Count IV, violation of the Truth in Lending Act ("TILA"), against Fannie Mae;

---

[1] Plaintiffs have voluntarily dismissed this claim to the extent it is based on a violation of Conn. Agencies Regs. § 36-a-647-6(15). Defendants have not moved to dismiss the CCPA claim to the extent it is based on a violation of Conn. Agencies Regs. §§ 36a-647-5(5) and 36a-647-6(2) or (12).

- Count V, violation of the Real Estate Settlement Procedures Act ("RESPA") against Green Tree, to the extent it is based on violations of 12 U.S.C. § 2605(m) or 12 C.F.R. 1024.36;[2] and

- Count IV, violation of RESPA against Fannie Mae.[3]

## INTRODUCTION

By this action, Plaintiffs, owners of property located at 60 Keating Drive, Stratford, Connecticut (the "Property"), seek damages against Green Tree, their mortgage loan servicer, and Fannie Mae, the owner of their loan, for alleged misconduct in servicing their mortgage loan. Plaintiffs claim that Green Tree:

- made misrepresentations concerning foreclosure in a letter to the Connecticut Department of Bank in violation of the CCPA;

- failed to credit payments to their account properly or provide an accurate payoff statement in violation of TILA; and

- overcharged them for flood insurance and failed to respond to requests for information in violation of RESPA.

Plaintiffs claim that, as the owner of the loan, Fannie Mae is vicariously liable for Green Tree's TILA and RESPA violations.

These claims should be dismissed. First, the letter issued by Green Tree to the Connecticut Department of Banking cannot support a CCPA claim because it was not sent "in connection with the collection of any debt." Second, the RESPA claim (based on a violation of 12 U.S.C. § 2605(m)) fails because the allegations in the Complaint and insurance policies

---

[2] Defendants have not moved to dismiss the RESPA claim against Green Tree to the extent it is based on a violation of 12 U.S.C. § 2605(k)(1)(c) or 12 C.F.R. 1024.35 (i.e., a failure to correct errors).

[3] Although Defendants have not moved to dismiss all claims, they expressly reserve all defenses other arguments for further proceedings.

MEI 21472417v.1

referenced therein conclusively establish that the alleged wrongful conduct took place before the

statute was in effect.  Moreover, Plaintiffs conclusory statement that they suffered emotional

distress as a result of Green Tree's failure to respond to their request for information is

insufficient to state a claim for violation of 12 C.F.R. § 1024.36.  Finally, as a matter of law,

Fannie Mae cannot be vicariously liable for Green Tree's alleged violations of RESPA and

TILA.

## ARGUMENT

**I.     GREEN TREE'S LETTER TO THE CONNECTICUT DEPARTMENT OF
         BANKING DOES NOT SUPPORT A CCPA CLAIM.**

Conn. Agencies Regs. § 36a-647-6 prohibits a creditor from using "any fraudulent,

deceptive, or misleading representation, device or pattern **in connection with the collection of

any debt**." Id. (emphasis added).  Conn. Agencies Regs. § 36a-647-5 likewise prohibits a

creditor from engaging "in any conduct the natural consequence of which to a reasonable person

would be to harass or abuse such person **in connection with the collection of a debt**." Id.

(emphasis added).  Plaintiffs' argue that they have stated a viable claim under § 36a-647-5(11),

and § 36a-647-6(4), (6) because Green Tree sent a letter to the Connecticut Department of

Banking in which it falsely represented that Plaintiffs were "ten months past due for the June

2014 loan payment and foreclosure proceedings have been initiated . . . ."  Opposition at 34.

However, this letter was not sent "in connection with the collection of any debt."  See Parola v.

Citibank (S. Dakota) N.A., 894 F. Supp. 2d 188, 203-04 (D. Conn. 2012) (dismissing claim for

violation of CCPA based on plaintiff's false representation concerning her payments made on

her consumer reports because such representations were not made "in connection with the

collection of her debt").  Rather, as Plaintiffs' concede, the letter was sent to the Connecticut

Department of Banking in response to a consumer complaint issued by Plaintiffs.  Compliant at

¶¶ 54 ("on or about March 12, 2015, GREEN TREE sent a letter to the Connecticut Department of Banking in response to the Plaintiffs' Complaint"); Opposition at 34 (Green Tree's letter was sent "in response to Plaintiffs' December 9, 2014 complaint to the Connecticut Department of Banking"); March 12, 2015 Letter, a copy of which is attached to the Complaint and is attached hereto as **Exhibit A**. The letter was not even directed at Plaintiffs. (March 12, 2015 Letter.) Since Plaintiffs have failed to allege that Green Tree engaged in any misconduct "in the connection with the collection of any debt," the CCPA claim (to the extent it is based on § 36a-647-5(11), and § 36a-647-6(4), (6)) must be dismissed.

## II.   PLAINTIFFS CANNOT SUSTAIN A CLAIM FOR VIOLATION OF SECTION 2605(M) OF RESPA BECAUSE THE STATUTE WAS NOT IN EFFECT WHEN THE ALLEGED WRONGFUL CONDUCT OCCURRED.

Contrary to Plaintiffs' argument, the allegations in the Complaint and the insurance policies obtained by Green Tree and Plaintiffs (which may be considered) establish that Green Tree charged Plaintiffs for flood insurance in 2013, which was before 12 U.S.C. § 2605(m) took effect on January 10, 2014. Specifically, in the Complaint, Plaintiffs allege that:

- By letter dated July 4, 2013, Green Tree informed Plaintiffs that flood insurance was required on the Property and represented that if it did not receive proof of flood insurance in **45 days** it may force-place insurance on the Property. (Complaint, at ¶ 37) (emphasis added);

- By letter dated July 12, 2013, Plaintiffs objected to flood insurance. (Complaint, at ¶ 28);

- By letter dated August 5, 2013, Green Tree "confirmed" that flood insurance was required. (Complaint, at ¶ 39);

4

- Green Tree subsequently obtained a force-placed policy effective **June 1, 2013**, and charged the premium to Plaintiffs' escrow account. (Complaint, at ¶ 42); and

- Plaintiffs then obtained flood insurance and Green Tree cancelled the force-placed policy but maintained a charge equivalent to two months of flood insurance. (Complaint, at ¶¶ 43-44).

Further, the insurance policies, which can be considered by the Court because they are referred to and are integral to the Complaint,[4] demonstrate that (consistent with its representation in the July 4, 2013 letter) Green Tree obtained the force-placed insurance policy on August 22, 2013 and backdated that policy to June 1, 2013. (Force-Placed Flood Insurance Policy, a copy of which is attached hereto as **Exhibit B**.) Plaintiffs subsequently provided proof to Green Tree of flood insurance effective September 16, 2013 through September 16, 2014. (Plaintiffs' Policy with Middlesex Mutual Ins. Co., a copy of which is attached hereto as **Exhibit C**.) According to Plaintiffs' own allegations, Green Tree then cancelled its policy but maintained charges for two months' of insurance to provide coverage before September 2013. The alleged misconduct, therefore, took place in 2013 before 12 U.S.C. § 2605(m) went into effect. See Motion to Dismiss at 9. The fact that the Complaint does not explicitly state the date the policy was obtained cannot, therefore, prevent dismissal.

## III.    PLAINTIFFS' CONCLUSORY ALLEGATION REGARDING EMOTIONAL DISTRESS DAMAGES IS INSUFFICIENT TO STATE A CLAIM UNDER RESPA FOR A FAILURE TO RESPOND TO A REQUEST FOR INFORMATION.

Courts in this circuit have held that conclusory allegations concerning emotional distress damages fail to allege sufficiency actual damages under RESPA for a failure to respond to

---

[4] The policies can be considered because they are referred to in the Complaint, are "integral" to the complaint; and Plaintiffs had knowledge of and relied on the policies in bringing suit. Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).

requests for information. See Corazzini v. Litton Loan Serv. LLP, No. 09–CV–199, 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010) ("[T]he courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff."); Yanes v. Ocwen Loan Servicing, LLC, No. 13-CV-2343 JS ARL, 2015 WL 631962, at *7 (E.D.N.Y. Feb. 12, 2015) (allegations that plaintiff suffered "financial loss and severe mental anguish and emotional distress over facing the loss or possible loss of his home" insufficient to state a claim for RESPA based on failure to respond timely and properly to qualified written request); Bonadio v. PHH Mortgage Corp., No. 12 CV 3421 VB, 2014 WL 522784, at *6 (S.D.N.Y. Jan. 31, 2014) (plaintiff's failure to explain how damages in the form of "time spent and inconvenience" and "emotional distress and mental anguish" were caused specifically by alleged § 2605 violations fatal to RESPA claim); Fournier v. Bank of Am. Corp., No. 5:13-CV-00702, 2014 WL 421295, at *4 (N.D.N.Y. Feb. 4, 2014) (conclusory allegations that defendants' failure to respond to three qualified written requests caused her "extreme emotional distress" that "manifested in physical ailments such as headaches, stomach discomfort, severe depression, severe anxiety, lack of sleep, inability to get out of bed, and an attempted suicide" insufficient to state a claim under RESPA).

Here, Plaintiffs allege that they suffered "actual damages" as a result of Green Tree's alleged failure to respond to requests for information "in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish and loss of capacity for the enjoyment of life." Opposition at 17; Complaint at ¶ 78. These conclusory allegations cannot support a RESPA claim. Nowhere in the Complaint do Plaintiffs allege how the failure to respond to their request(s) caused them "emotional distress." See e.g., Fournier, 2014 WL 421295, at *4 (dismissing RESPA claim where plaintiff "fail[ed] to state how the Defendants'

alleged violations of RESPA [were] the proximate cause of her [emotional distress]"). As a result, the RESPA claim must be dismissed.[5]

## IV.    FANNIE MAE CANNOT BE VICARIOUSLY LIABLE FOR GREEN TREE'S ALLEGED RESPA VIOLATIONS.

Section 2605 of RESPA, entitled "Servicing of mortgage loans and administration of escrow accounts," and its implementing regulation, Regulation X, regulate the conduct of "servicers" of federally related mortgage loans. See 12 U.S.C. § 2605; Bennett v. Nationstar Mortgage, LLC, No. CV 15-00165-KD-C, 2015 WL 5294321, at *10-11 (S.D. Ala. Sept. 8, 2015) ("Regulation X regulates the conduct of servicers of federally related mortgage loans"). Plaintiffs concede that Fannie Mae is not "servicer" as defined by § 2605. Rather, Plaintiffs attempt to extend liability to Fannie Mae for Green Tree's alleged violations of § 2605 and Regulation X under the doctrine of vicarious liability. See Opposition at 5. Plaintiffs' argument is based on an unreported decision from the District of New Hampshire where the court determined that vicarious liability is available against a mortgagee for its servicer's RESPA violations. Rouleau v. U.S. Bank, N.A., No. 14–CV–568–JL, 2015 WL 1757104, at *6–7 (D.N.H. Apr. 17, 2015). This case was wrongly decided and has been rejected by at least one court. See Bennett, 2015 WL 5294321, at *10-11 (rejecting court's decision in Rouleau).

The Rouleau decision was based on the court's conclusion that traditional tort rules of vicarious liability applied to RESPA unless Congress "expressed a contrary intent" in the statute and that "the record before the court fail[ed] to reveal any statutory, regulatory, or judicial indication that RESPA does not incorporate traditional tort rules of vicarious liability." Id. at *7-

---

[5] Plaintiffs argue that Green Tree's failure to correct errors in violation of 12 U.S.C. § 2605(k)(1)(c) caused them damages because Green Tree continued to misapply payments. Defendants, however, have not moved to dismiss the RESPA claim to the extent it is based on a violation of 12 U.S.C. § 2605(k)(1)(c).

8.[6]  Contrary to the court's interpretation in Rouleau, as the court in Bennett v. Nationstar

Mortgage, LLC, No. CV 15-00165-KD-C, 2015 WL 5294321, at *10-11 (S.D. Ala. Sept. 8,

2015), recognized, "the provisions of RESPA and Regulation X specify exactly which type of

actor is burdened by these provisions" – the loan servicer, not a (non-servicer) owner of the loan.

Bennett, 2015 WL 529431, at *10.  Specifically, RESPA imposes a duty and, therefore, liability,

only upon loan servicers.  See 12 U.S.C. § 2605(k)(1)(C) ("**Servicer prohibitions** . . . a **servicer**

shall not . . .); 12 U.S.C. § 2605(m) ("All charges, apart from charges subject to State regulation

as the business of insurance, related to force-placed insurance imposed on the borrower **by or**

**through the servicer** shall be bona fide and reasonable.") (emphasis added); 12 C.F.R. §

1024.35 ("A **servicer** shall comply with the requirements of this section . . . .") (emphasis

added); 12 C.F.R.  § 1024.36 ("A **servicer** shall comply with the requirements of this section . . .

.") (emphasis added).  Congress certainly could have imposed RESPA duties on the owner of the

loan, but chose not to.  Congress defined a "servicer" as "a person responsible for the servicing

of a federally related mortgage loan (including the **person who makes or holds such loan if**

**such person also services the loan**)."  12 U.S.C. §2605(i)(2) (emphasis added).  Thus, a

"person" who "holds [a federally related mortgage] loan," like Fannie Mae, is considered a

servicer only if "also services the loan."  Had Congress intended to include within the definition

of servicer a person who holds a federally related mortgage loan but does not service it, or

intended to impose liability on such a person, it could have done so.  But it did not.  Interpreting

---

[6] The court stated, however, that it was "open to revisiting [its conclusion that RESPA incorporated vicarious liability rules] in a different procedural context if [defendant] is able to identify some evidence in the statutory language evincing a Congressional intent to the contrary." Rouleau, 2015 WL 1757104, at *8.

RESPA to allow for liability on a common law agency theory where the legislature specifically chose not to impose such liability would be contrary to congressional intent.

Further, the <u>Rouleau</u> court's conclusion that "RESPA does not limit liability to servicers, but provides that '[w]hoever' violates a statutory requirement may be held civilly liable," <u>Rouleau</u>, 2015 WL 1757104, at *7, is unsound.   To be sure, 12 U.S.C. § 2605(f) provides that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower." But only servicers have an obligation to comply with RESPA and thus, only servicers can be liable for failing to comply with those obligations.  <u>See</u> <u>Bennett</u>, 2015 WL 5294321, at *10-11 (if servicers violated their obligations under Regulation X, then they would be liable but an owner of a loan that did not act as servicer cannot be liable for obligations of a servicer).  "Indeed, courts routinely dismiss RESPA claims where the alleged wrongs were not stated against a servicer." <u>E.g.</u> <u>i.d.</u> (citing <u>Ford v. Saxon Mortg. Servs., Inc.</u>, No. CV-10-RRA-989-M,  2012 WL 2862035 (N.D. Ala. June 14, 2012) (dismissing RESPA claim against non-servicers, including owner of the loan, because "This statute puts a burden **only on servicers of loans**. Only Saxon has been identified as a loan 'servicer.' All other defendants are due to be dismissed as to any RESPA claim based on this statute.") (emphasis added)); <u>Gibson v. Mortgage Elec. Registration Sys., Inc.</u>, No. 11-2173-STA, 2011 WL 3608538, at *5 (W.D. Tenn. Aug. 16, 2011) (holding that defendants that were not loan servicers "had no duty to respond to plaintiffs' QWR" and a claim based on such violations cannot be sustained against them because "RESPA makes clear that only 'servicers' have a duty to timely respond to QWRS" and "parties who are not loan servicers . . . are not liable under RESPA" under vicarious liability theory "whether or not they have knowledge of . . .[the] violations").

9

## V.    FANNIE MAE CANNOT BE VICARIOULSY LIABLE FOR GREEN TREE'S ALLEGED TILA VIOLATION OR LIABLE AN AS ASSIGNEE.

Plaintiffs' argument that Fannie Mae can be vicariously liable for Green Tree's alleged violation of TILA (i.e., a failure to credit payments timely or provide an accurate payoff statement), even if it is not a creditor or assignee, must be rejected.  Although some courts have recognized vicarious liability for a loan servicer's TILA violations, others have rejected the imposition of vicarious liability based on the plain language of TILA.  In Holcomb v. Fed. Home Loan Mortg. Corp., No. 10-81186-CIV, 2011 WL 5080324 (S.D. Fla. Oct. 26, 2011), the court rejected the plaintiff's claim that the lender was vicariously liable for its servicer's failure to respond to his request for information.  While the court recognized the "apparent conundrum in imposing an obligation on servicers to provide information on request but also absolving servicers of liability under TILA where the servicers are not also the owners of the obligations," the court held that there could be no vicarious liability for a servicer's TILA violation based on the plain language of the statute.  Id. at *6-7.  Specifically, the court concluded:

> The Court must  . . . take notice of Congress's own approach to
> rectifying the problem, which has not been to apply agency
> principles to TILA but rather to add provisions imposing an
> affirmative duty on tranferees – including assignees – to notify
> borrowers in writing of the transfer. . . . [T]he Court declines to
> expand liability for violations of § 1641(f)(2) beyond that indicated
> by the text of the statute . . . The Court cannot say that Congress
> intended to make creditors and assignees [vicariously] liable under
> § 1641(f)(2) . . . and although the resulting difficulties in enforcing
> (f)(2) are alarming, the Court notes that Congress has attempted to
> address these concerns by imposing distinct duties on creditors and
> assignees rather than expanding (f)(2)'s reach.

Id. at *6-7; see also Kievman v. Fed. Nat. Mortgage Ass'n, 901 F. Supp. 2d 1348, 1352 (S.D. Fla. 2012) (holding that creditors and assignees cannot be liable under TILA for a servicer's failures).

Moreover, it is well-settled that a servicer cannot be liable under TILA. See e.g., Thrane v. Litton Loan Servicing LP, No. 08-CV-4149 ADS ARL, 2009 WL 9121140, at \*2 (E.D.N.Y. Oct. 27, 2009) (dismissing TILA claim against loan servicer because loan servicer could not be liable under TILA unless it "is or was the owner of the obligation"); Blaize–Sampeur v. McDowell, No. 05–CV–4275, 2006 WL 3903957, at \*3 n. 4 (E.D.N.Y. Oct. 18, 2005) (holding that plaintiff could not bring TILA claim against loan servicer); Horton v. Country Mortgage Servs., Inc., No. 07 C 6530, 2010 WL 55902, at \*3 (N.D. Ill. Jan. 4, 2010) (dismissing TILA claim against current servicer of the loan because servicers cannot be liable under TILA). Since there can be no liability against a loan servicer, there can be no primary liability to attribute to the owner of the loan through agency principles. Kievman, 901 F. Supp. 2d at 1352-53 ("there is no question of vicarious liability for the servicer's violation if the servicer could not itself be held liable"); see also Holcomb, 2011 WL 5080324, at \*7 ("[I]t remains unclear what liability would transfer given that [the servicer] itself bears no liability under the facts alleged."). As the court in Kievman v. Fed. Nat. Mortgage Ass'n, 901 F. Supp. 2d 1348, 1352 (S.D. Fla. 2012) reasoned:

> This Court agrees with the position taken in Holcomb and declines to extend liability to obligation owners—be they creditors or assignees—for their servicers' failures to comply with § 1641(f)(2). The reference to 'subsection (f)' in § 1640(a) is best explained by the fact that the owner of an obligation may sometimes act as the servicer of that obligation. The statute contemplates this scenario in the first paragraph of subsection (f), which reads: 'A servicer of a consumer obligation . . . shall not be treated as an assignee of such obligation for the purposes of this section unless the servicer is or was the owner of the obligation.' 15 U.S.C. § 1641(f)(1). In the case of an owner-servicer, then, failure to comply with subsection (f) does subject it to liability. But there is no question of vicarious liability for the servicer's violation if the servicer could not itself be held liable.

11

Id. 1352-53.  This court should adopt the reasoning of the <u>Holcomb</u> and <u>Keivan</u> courts, which are based on the plain language of the statute, and decline to impose vicarious liability on Fannie Mae.

Plaintiffs' argument that Fannie Mae can be liable an assignee should likewise be rejected.  An assignee of the original creditor can only be liable under TILA if two conditions are met: (1) "the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter" and (2) "the assignment to the assignee was voluntary."  15 U.S.C. § 1641(e).  Although Plaintiffs cites cases from the Southern District of Florida which hold that an assignee can be liable for servicer's post-origination disclosure failures, even those cases recognize that Second Circuit has "chosen to apply the statute literally, and held that assignees cannot be liable under TILA for obligations that arose after the assignment took place because, by definition, those violations could not have been 'apparent on the face of the disclosure statements' provided by the original creditor."  <u>Lucien v. Fed. Nat. Mortgage Ass'n</u>, 21 F. Supp. 3d 1379, 1387 (S.D. Fla. 2014) (citing <u>Vincent v. The Money Store</u>, 736 F.3d 88, 108-109 (2d Cir. 2013)); <u>see also</u> <u>Signori v. Fed. Nat. Mortgage Ass'n</u>, 934 F. Supp. 2d 1364, 1368 (S.D. Fla. 2013) (disclosure statements referred to in § 1641(a) and (f) are those documents "generated in connection with the origination of the loan" and, therefore, "documents generated after an assignment has occurred cannot form the basis of an assignee's liability under Section 1641" ); <u>Alaimo v. HSBC Mortgage Servs., Inc.</u>, No. 13-62437-CIV, 2014 WL 930787, at *2 (S.D. Fla. Mar. 10, 2014) (accord).  This Court is bound to follow the Second Circuit's decision in <u>Vincent</u> and should conclude that because the alleged TILA violation occurred after the assignment of the loan to

MEI 21472417v.1

Fannie Mae, it was not apparent on the face of any origination disclosures and, as a result, Fannie

Mae cannot be liable as an assignee.

## CONCLUSION

For the reasons set forth above and in Defendants' Motion to Dismiss, Green Tree and

Fannie Mae request this Court dismiss Counts III (in part), IV, V (in part), and VI with prejudice.

Defendants
GREEN TREE SERVICING LLC and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

By its attorneys,

/s/ Amy B. Hackett
Amy B. Hackett (admitted *pro hac vice*)
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
Tel: (617) 449-6500
Fax: (617) 607-9313
Email: ahackett@mccarter.com

Shawn Smith (Federal Bar No. CT28340)
MCCARTER & ENGLISH, LLP
185 Asylum Street
CityPlace I, 36th Flr.
Hartford, CT 06103-3495
Tel: (860) 275-6794
Fax: (860) 724-3397
Email: shsmith@mccarter.com

Dated:  November 12, 2015

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November, 2015, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system and sent by first class mail to all non-registered parties.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Amy B. Hackett*
Amy B. Hackett

14